IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Jacqueline M. Robinson f/k/a Jacqueline )
M. Cox and Jeffrey M. Robinson )
)
    Plaintiffs, )
)
vs. )    Civil Action No. 9-1066
)
County of Allegheny, Allegheny County Dept. )
Of Human Services Office of Children, Youth, )
and Families, Brooke Jordan and Deborah Sadler )
Kimes )
)
    Defendants. )

AMBROSE, District Judge

## OPINION
### and
## ORDER OF COURT

### Synopsis

A Mother contends that the County, its Children and Families Department, and its

employees, deprived her of various constitutional interests when it conducted an investigation

into allegations of child abuse. The Defendants contend that the 42 U.S.C. § 1983 and related

state claims are untimely. I agree. The Motion to Dismiss is granted.

### Analysis

Plaintiff Jacqueline Robinson ("Robinson")[1] had a minor child with David Bertus

("Bertus"). In May of 2002, Bertus initiated a custody case concerning the minor child.

Apparently the custody case grew particularly contentious.

---

[1] Robinson's husband Jeffrey M. Robinson is also a Plaintiff. He asserts a claim for loss
of consortium. Because the challenge to the timeliness of the Complaint focuses upon
Robinson's actions, I will refer, for the sake of clarity in this Opinion, solely to her as the
Plaintiff.

On November 20, 2005, the minor child returned to Bertus from a weekend visit with Robinson. When giving him a bath several hours later, Bertus allegedly noticed that the minor had scratches on his nose and that his buttocks were red. Bertus then took the minor to Children's Hospital to be examined. According to the Complaint, the emergency room records indicated that the redness to the buttocks was the result of a trauma. The records reflect that "[t]he patient stated that the mother had 'paddled' him with an 'open' hand." Following the examination, a report was made to Defendant Allegheny County Department of Human Services Office of Children, Youth and Families ("CYF"). Defendant Brooke Jordan ("Jordan") was assigned as the caseworker. Defendant Sadler Kimes ("Kimes") is Jordan's supervisor.

In the CYF Initial Referral Information Sheet dated November 22, 2005, Dr. Tham, the emergency room examining physician, gave a "zero pain statement." The report also noted that the injury "could" have caused pain.[2] Jordan allegedly had a follow up telephone conversation with Dr. Tham during which Dr. Tham changed his conclusion insofar as finding that the injury "*would* have caused *severe* pain." Though this conversation is memorialized in several CYF documents, Dr. Tham denies recalling any such conversation or ever changing his conclusion in such a manner.

On Tuesday November 23, 2005, Robinson met with Jordan regarding the investigation. At that time, Robinson denied having harmed the minor and explained that she and Bertus were involved in a contentious custody case; that Bertus had previously engaged in fraud; and that Bertus had likely harmed the minor and was likely coercing him into making false allegations. Robinson's husband confirmed that Robinson had not harmed the minor.

Danielle Hightower, a forensic investigator with Children's Hospital, subsequently

---

[2] According to the Complaint, the Pennsylvania Child Protective Services Law, 23 Pa. C.S.A. section 6301 et seq., defines "child abuse" as a "serious injury" which is defined to include "severe pain." See Complaint, para. 35.

2

interviewed the minor child. Though CYF was asked to record the interview and to preserve any resulting evidence, it did neither. Further, Hightower admitted that she destroyed her handwritten notes of the interview and that she and Jordan failed to preserve a picture that the minor child drew during the interview which showed the mark on his buttocks. Following the interview with the minor child, during which the minor child indicated that he was spanked with his clothes on and that the spanking did not hurt, CYF concluded that the incident was "indicated" against Robinson. This occurred on January 3, 2006. CYF then filed a childline report against Robinson reflecting that she was a child abuser. Robinson characterizes this report as a matter of public record. She contends that it prohibited her from either obtaining gainful employment relating to working with children or from volunteering her time to activities involving children (including those with her other minor child). On January 21, 2006, CYF sent to Robinson a letter indicating that she had to undergo a safety plan including refraining from using corporal punishment and attend parenting classes.

At approximately the same time, Bertus filed an emergency motion in the custody case relating to the charges against Robinson. Jordan testified at the subsequent hearing and explained the mandate that Robinson undergo a safety plan and attend parenting classes. The court premised its decision not to suspend Robinson's custody rights on her compliance with CYF's requests.[3]

Robinson filed an administrative appeal of CYF's findings with the Pennsylvania Department of Public Welfare. An Administrative Law Judge issued a Recommendation and Order following two days of hearings. The Recommendation and Order, which was adopted in its entirety on June 4, 2007 by the Department of Public Welfare, concluded that there was no

---

[3] Surprisingly, approximately one week after telling Robinson that she had to comply with its plan, and after telling the court in the custody case the same, CYF issued a letter explaining that she did not have to continue with any CYF services, including parenting classes.

3

evidence that the minor child was in severe pain and that there was no showing of criminal negligence.

Robinson and her husband then filed this action against Allegheny County, CYF, Jordan and Kimes. She asserts a claim against Jordan and Kimes under 42 U.S.C. § 1983 for what she describes as violations of her Fourth and Fourteenth Amendment liberty and privacy interests in the parent-child relationship (Count I). She also asserts a claim against Jordan and Kimes under 42 U.S.C. § 1983 for violations of her rights to due process under the Fifth and Fourteenth Amendments (Count II). Count III appears to be § 1983 claims asserted against Allegheny County under the Fourth, Fifth and Fourteenth Amendments based upon a failure to instruct, train, supervise and control the actions of Jordan and Kimes. Robinson also asserts an intentional infliction of emotional distress claim against all Defendants (Count IV). Finally, Jeffrey Robinson asserts a loss of consortium claim against all Defendants (Count V).

The Defendants, who removed the action to this Court, seek the dismissal of the Complaint as untimely.[4] According to the Defendants, Robinson's § 1983 claims accrued more than two years before she initiated this action. As such, they reason, the claims are untimely. The intentional infliction of emotional distress claim suffers a similar fate, the Defendants insist. Finally, because the claim for loss of consortium is entirely derivative in nature, and the other claims are fatally flawed, the loss of consortium claim must be dismissed as well.

For the reasons set forth below, I agree with the Defendants' position. The claims are dismissed as untimely. Furthermore, because amending the Complaint would prove fruitless, the dismissal is with prejudice.

_____

[4] An affirmative defense such as the statute of limitations, may be raised in a motion to dismiss where it is apparent from the face of the complaint that the cause of action is untimely. See Robinson v. Johnson, 313 F.3d 128, 13 (3d Cir. 2002). Accordingly, I reject Robinson's argument that the Defendants' timeliness challenge is premature.

## Standard of Review

When deciding whether to grant or deny a 12(b)(6) motion the Supreme

Court has held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65,167 L.Ed.2d 929

(2007). (internal citations, footnotes and quotation marks omitted). See also, Phillips v. County

of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations must be enough

to raise a right to relief above the speculative level).

Most recently, in Ashcroft v. Iqbal, ___ U.S.___, 129 S.Ct. 1937 (2009), the Supreme

Court held, ". . . a complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citations and internal quotation

marks omitted).

In Iqbal, the Court specifically highlighted the two principles which formed the basis of

the Twombly decision: First, for the purposes of a motion to dismiss, courts must accept as true

all factual allegations set forth in the complaint, but courts are not bound to accept as true any

legal conclusions couched as factual allegations. Id. at 1949-1950. See also, Fowler v. UPMC

Shadyside, ___ F.3d ___, No. 07-4285, 2009 WL 2501662 (3d. Cir. Aug. 18, 2009). Second, a

complaint will only survive a motion to dismiss if it states a plausible claim for relief, which

requires a court to engage in a context-specific task, drawing on the court's judicial experience

and common sense. *Id.* at 1950. Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – the complainant is entitled to relief. Id., citing, F.R.Civ.P. 8(a)(2).

Analysis

I. Section 1983 Claims

In Counts I, II and III, Robinson asserts claims under 42 U.S.C. § 1983 based upon various constitutional violations. As stated above, the Defendants contend that the claims should be dismissed as untimely. Section 1983 does not provide its own statute of limitations. See Wallace v. Kato, 549 U.S. 384, 127 S. Ct. 1091, 1094 (2007). Instead, federal courts use the statute of limitations for personal injury torts. Wallace, 549 U.S. at 387, 127 S. Ct. at 1094, *citing*, Owens v. Okure, 488 U.S. 235, 249-50, 109 S. Ct. 573 and Wilson v. Garcia, 471 U.S. 261, 279-80, 105 S. Ct. 1938 (1985). Pennsylvania establishes a two-year statute of limitations for personal injury tort claims. See 42 Pa. Cons. Stat. Ann. § 5524.

Though Pennsylvania law governs the length of the statute of limitations (2 years), federal law governs the date upon which the claim accrues. Wallace, 549 U.S. at 388, 127 S. Ct. at 1095. Thus, accrual occurs "when the plaintiff has 'a complete and present cause of action.'" Id., *quoting*, Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. Of Cal., 522 U.S. 192, 201, 118 S. Ct. 542 (1997). See also, Koehnke v. City of McKeesport, Civ. No. 8-4519, 2009 WL 3451263 (3d Cir. Oct. 28, 2009) (stating that "[o]rdinarily, a section 1983 claim accrues at the time when the injury is sustained - that is, 'when the plaintiff has a complete and present cause of action.'") and Cassell v. City of Philadelphia, Civ. No. 9-2537, 2009 WL 3261995 (3d Cir. Oct. 13, 2009) (stating that "[a] section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based.").

6

Here, the facts set forth in the Complaint indicate that Robinson sustained her injury on January 3, 2006 - when CYF found that the report of abuse was "indicated." See Complaint, ¶ 28. At that time, she was labeled a child abuser and a childline report was made a matter of public record.[5] Robinson knew at the time that she had not engaged in child abuse. She knew that she had informed CYF and its employees of the contentious custody dispute and Bertus's likely fraud. She knew that the Defendants failed to pursue her allegations. Simply stated, she knew or should have known of her cause of action at this time.

At the very least, her cause of action was ripe when the Defendants completed their testimony at the appeal hearing. The Complaint indicates that the appeal hearing concluded on February 22, 2007. This appears to be the last date on which the Defendants took any action with respect to Robinson's custodial rights. Yet Robinson waited until June 2, 2009 to file this claim - more than 2 years beyond this date.

I find unconvincing Robinson's attempts to argue that her claim did not accrue until CYF's determination was reversed by order of the Pennsylvania Department of Public Welfare dated June 4, 2007. Robinson has not identified any case law suggesting that a plaintiff challenging an agency's findings regarding a child abuse allegation must, as a prerequisite, succeed in getting the agency's decision reversed prior to asserting claims under § 1983. Nor did independent research disclose any such cases. For this reason, I find the analogy to malicious prosecution cases to be unpersuasive.

I similarly reject as unconvincing Robinson's contention that the claims did not accrue until the "defamation" was lifted. Specifically, Robinson urges that she was "defamed" when labeled a child abuser by the Defendants and that the label remained until the determination

---

[5] It is this record that allegedly prevented Robinson from obtaining certain types of gainful employment and from volunteering in various capacities.

7

was reversed. See Docket No. [15], p. 9. Accepting for purposes of argument only the "defamation" analogy, a cause of action for defamation (if the analogy is to be made) accrues when the statements are made. See Pendergrass v. Choice Point, Inc., Civ. No. 8-188, 2008 WL 5188782 at * 2 n. 6 (E.D. Pa. Dec. 10, 2008). Here, the defamation occurred when CYF found the allegations of abuse indicated and filed its report. These actions occurred more than two years before Robinson initiated this action.

I also reject Robinson's contention that her suffering of a "permanent medical condition" as a result of the Defendants' actions mandates a later accrual date for her claim. See Docket No. [15], p. 9. Indeed, as the Supreme Court acknowledged in Wallace v. Kato, 549 U.S. 384, 391, 127 S. Ct. 1091, 1097 (2007), consequential damages resulting from an initial wrong does not change the commencement date for the statute of limitations. "'Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable.'" Wallace, 549 U.S. at 391, 127 S. Ct. at 1097, quoting, 1 C. Corman, Limitation of Actions § 7.4.1, pp.526-527 (1991) (footnotes omitted). "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had become harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." Wallace, 549 U.S. at 391, 127 S. Ct. at 1097. Robinson incurred damages - damages related to her reputation and damages related to her parent / child relationship - as soon as the Defendants found the report of child abuse "indicated."

In short, I find Robinson's § 1983 claims accrued on January 3, 2006 - the date upon which CYF found that the report of child abuse was "indicated." At the very latest, the claims accrued when the Defendants testified before the ALJ on or about February 22, 2007. The

8

Defendants did not engage in any action beyond those dates which allegedly infringed upon Robinson's constitutional rights. Further, Robinson knew or should have known at that time of her causes of action. She nevertheless delayed more than two years before initiating this action. Consequently, the § 1983 claims are untimely and should be dismissed.[6]

II. Intentional Infliction of Emotional Distress

Robinson asserts a claim against all the Defendants in Count IV of the Complaint for intentional infliction of emotional distress. "The statute of limitations for intentional infliction of emotional distress in Pennsylvania is two years from the date of the last conduct." Robinson v. Consolidated Rail Corp., Civ. No. 7-1641, 2009 WL 3488038 at * 11 (M.D. Pa. Oct. 22, 2009), citing, 42 Pa. Cons. Stat. Ann. § 5524 and Garvin v. City of Philadelphia, 354 F.3d 215, 219 (3d Cir. 2003). The cause of action accrues when the injury is inflicted and the right to institute and maintain the suit arises. Robinson, 2009 WL 3488038 at * 11 (citations omitted). As stated above, the Defendants did not take any actions within two years of the date upon which Robinson initiated this action. Accordingly, the claim must be dismissed.

III. Loss of Consortium

Jeffrey Robinson asserts a claim for loss of consortium. A loss of consortium claim is entirely derivative in nature. See O'Connor v. SandyLane Hotel Co., Ltd., 496 F.2d 312, 318 (3d

---

[6] Robinson makes a passing reference to the doctrine of "a continuing violation." "'To establish that a claim falls within the continuing violations theory, the plaintiff must do two things. First, he must demonstrate that at least one act occurred within the filing period: The crucial question is whether any present violation exists. Next, the plaintiff must establish that the [alleged wrong] is more than the occurrence of isolated or sporadic acts.'" Heilman v. T.W. Ponessa And Assoc., Civ. No. 8-1677, 2009 WL 82707 at * 4 (3d Cir. Jan. 14, 2009) quoting, West v. Philadelphia Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995). I find the doctrine inapplicable here because, as stated above, there is no evidence that at least one act occurred within the filing period. Though Robinson contends that the childline report remained on file within the statute of limitations period, the actual filing of the report was a discrete act and was done more than two years before the Robinsons instituted this action. Accordingly, the doctrine of continuing violation is inapplicable.

9

Cir. 2007) (citations omitted).  Thus, if the underlying claims are fatally flawed, the loss of consortium claim cannot survive.  As set forth above, none of Robinson's underlying claims are timely.  Consequently, Jeffrey Robinson's loss of consortium claim must be dismissed.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Jacqueline M. Robinson f/k/a Jacqueline    )
M. Cox and Jeffrey M. Robinson             )
                                           )
        Plaintiffs,                        )
                                           )
        vs.                                )        Civil Action No. 9-1066
                                           )
County of Allegheny, Allegheny County Dept. )
Of Human Services Office of Children, Youth, )
and Families, Brooke Jordan and Deborah Sadler )
Kimes                                      )
                                           )
        Defendants.                        )

AMBROSE, District Judge


## ORDER OF COURT

AND NOW, this /7th day of November, 2009, after careful consideration, and for the

reasons set forth in the accompanying Opinion, the Motion to Dismiss (Docket No. [10]) is

GRANTED.  The Complaint is dismissed with prejudice.  This case is marked "Closed"

forthwith.

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose,
U.S. District Judge

11